IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds,<br><br>Plaintiffs,<br>v.<br><br>ALL TIGHT MASONRY, INC., an Illinois corporation, and BRANDON CALDWELL, individually,<br><br>Defendants. | FILED: JUNE 12, 2008<br>08CV3393<br>JUDGE CASTILLO<br>MAGISTRATE JUDGE DENLOW<br>NF<br><br>Case No.: |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo, and Charles Ingrassia, and for their Complaint against Defendants All Tight Masonry, Inc. and Brandon Caldwell, state:

## COUNT I

### (Failure To Pay Benefit Contributions)

For a cause of action against Defendant All Tight Masonry, Inc.:

1.   Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), and 28 U.S.C. §1331.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant All Tight Masonry, Inc., (hereinafter "All Tight" or the "Company") is an Illinois corporation. The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2006 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

7. Defendant Brandon Caldwell ("Caldwell") is and was at all times relevant the President and a shareholder of the Company.

8. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training

3

Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

12. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to report and pay contributions owed to Plaintiff Laborers' Pension Fund from April 2008 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries:

(b) failed to report and pay all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from April 2008 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay all contributions owed to Laborers' Training Fund from April 2008 forward, thereby depriving the Laborers' Training Fund of contributions, income and

information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)    failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from April 2008 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(e)    failed to obtain and maintain a surety bond in accordance with the terms of the Agreement.

13.    The Company failed to submit timely benefit reports and contributions for the period of September through November 2006, February, March, May, October, and December 2007 and March 2008.  Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes $3,384.95 in liquidated damages plus interest on the late reports for the period of September through November 2006, February, March, May, October, and December 2007 and March 2008.

14.    The Company failed to submit $599.20 in contributions due on the Company's June 2007 report.  Accordingly, the Company owes $599.20 in contributions, plus interest and liquidated damages on the June 2007 report.

15.    The Company's failure to submit payment of benefit contributions and failure to obtain and maintain a surety bond violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

16.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust

Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant All Tight Masonry, Inc.:

a. ordering the Company to submit and pay current reports and contributions and submit the Company's books and records to an audit for the period of September 1, 2006 forward:

b. entering judgment in sum certain in Plaintiffs' favor and against the Company on the amounts shown due and owing pursuant to the audit including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and interest on later reports; audit costs, and Plaintiffs' attorneys' fees and costs;

c. ordering the Company to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

d. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Union Dues)

For a cause of action against Defendant All Tight Masonry, Inc.:

17. Plaintiffs reallege paragraphs 1 through 11 of Count I.

18. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers

union dues which have been or should have been deducted from the wages of covered employees.

19. Notwithstanding the obligations imposed by the Agreement, the Company has failed to submit and pay dues that were or should have been withheld from the wages of its employees performing covered work for the period of March 2008 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

20. The Company failed to submit dues totaling $256.17 for the period of July 2007 through September 2007 and January through February 2007 and failed to submit timely dues reports for the period of June and October 2007 and January 2008. Under the terms of the Agreement, the Company owes $78.16 in liquidated damages on the late dues payments for the period of June and October 2007 and January 2008.

21. Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant All Tight Masonry, Inc. ordering the Company to submit and pay current dues reports for the period of March 2008 forward, ordering the Company to submit its books and records on demand to an audit for the period of September 1, 2006 forward, entering judgment in favor of the Funds and against the Company for the Union dues owed together with all liquidated damages, audit costs, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Violation of Illinois Wage Payment and Collection Act)

For a cause of action against Defendants All Tight Masonry, Inc. and Brandon Caldwell:

22. Plaintiffs reallege paragraphs 1 through 11 of Count 1 and paragraphs 18 through 21 of Count II.

23. This Court has supplemental jurisdiction over this Count pursuant to 28 U.S.C. § 1367.

24. Venue is proper pursuant to 28 U.S.C. § 1391(b).

25. During the period of March 2008 forward, Defendant Company's employees performed work for the Company and earned wages.

26. Employees of the Defendant Company performing work defined as covered under the terms of the Agreement executed written assignments authorizing and directing the Defendant Company to withhold monies from their wages for remittance to the Union in satisfaction of dues and fee obligations.

27. For the period of March 2008 forward, the Company has deducted money from the wages of its employees pursuant to the wage deductions signed by the employees but failed to properly remit the payments to the Union.

28. Plaintiffs have demanded payment of the amounts due to the Union but the Company has failed to remit payment of those amounts.

29. Defendant Company's conduct violates the Illinois Wage and Payment Collection Act, 820 ILCS 115/1 et seq.

30. At all times material, Defendant Caldwell acted directly in the interest of Defendant Company in relation to its employees.

31. At all times material, Defendant Caldwell controlled the terms of employment of Defendant Company's employees and exercised control over the payment of wages and the withholding of monies from the employees' wages.

32. At all times relevant, Defendant Caldwell controlled disbursements made by Defendant Company including the issuance of payroll checks and the remittance of dues to the Union.

33. Defendant Caldwell knowingly permitted Defendant Company to retain the wages withheld from such employees' paychecks rather than remitting said funds to the Union.

34. Defendant Caldwell knowingly and actively conducted or participated in the actions of Defendant Company alleged above causing injury to the Union. As such, Caldwell is an "employer" as defined in the Illinois Wage Payment and Collection Act, 820 ILCS 115/13, and is personally liable for the failure to properly deduct monies from employees' wages and remit those monies to the Union for the payment of dues.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Plaintiffs and against Defendants All Tight Masonry, Inc. and Brandon Caldwell directing Defendants to submit union dues and reports, ordering Defendants to submit the Company's books and records to an audit for the period of September 1, 2006 forward if such is requested by Plaintiffs, enter judgment in favor of Plaintiffs and against Defendants for the amount of union dues owed, plus liquidated damages and the Funds' reasonable attorneys' fees and costs pursuant to 820 ILCS 115/13 and the Attorneys Fees in Wage Actions Act, 705 ILCS 225/1. Plaintiffs

also request that this Court grant such other legal and equitable relief as this Court deems just and proper.

## COUNT IV

### (Conversion)

For a cause of action against Defendants All Tight Masonry, Inc. and Brandon Caldwell:

35. Plaintiffs reallege paragraphs 1 through 11 of Count 1, paragraphs 18 through 21 of Count II, and paragraphs 23 through 34 of Count III.

36. Pursuant to the wage assignments executed by each of the Defendant Company's employees, the Union has a right to immediate possession of those monies on the tenth day of the month following the month in which the wages were earned and the deductions were made from employees' wages.

37. For the period of March 2008 forward, Defendants Company and Caldwell have deducted and withheld monies from employees' wages for union dues and appropriated that money for their own use and benefit thereby depriving the Union of its property. At that time, Defendants Company and Caldwell without right to possession of those monies withheld from the employees' wages.

38. Through the actions enumerated above, Defendants Company and Caldwell have wrongfully converted the Union's property and should be justly required to pay the Union the full value of that property.

WHEREFORE, Defendants All Tight Masonry, Inc. and Brandon Caldwell should be ordered jointly and severally to submit all dues reports and the monies due therein, submit the

Company's books and records to an audit to verify all amounts dues, and submit payment in full of all monies wrongfully converted, and such other relief that is equitable and just.

## COUNT IV

### (Fraud)

For a cause of action against Defendants All Tight Masonry, Inc. and Brandon Caldwell:

39. Plaintiffs reallege paragraphs 1 through 11 of Count 1, paragraphs 18 through 21 of Count II, paragraphs 23 through 34 of Count III, and paragraphs 36 through 38 of Count IV.

40. Defendants Company and Caldwell have committed fraud on the Funds by intentionally submitting false benefit and dues reports. Specifically, Defendants maintained a separate account ("Second Account") which they used to pay laborers of the Company. Payments for hours worked made to the employees from the Second Account were not reported to the Funds or Union and records from that account were not disclosed to Fund auditors during routine benefit and dues contributions compliance audits.

41. As a result of the fraud committed by the Defendants, Plaintiffs have failed to receive benefit contributions and dues for at least 1,425.5 hours on behalf of employee Roberto Garcia for the period of January 2006 through October 2007. In addition, the Funds believe that Defendants may have underreported hours on additional employees.

42. Signatory contractors are required to submit monthly benefit contribution reports on the tenth day of the month following the month in which covered work was performed identifying the numbers of hours worked by individuals who perform covered work under the terms of the Agreements. Those report forms provide in relevant part:

11

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing the Laborers' Pension and Welfare, et al. and accepts all of the terms thereof with the intention of providing benefits to its laborers.

43. The Funds and the District Council relied to their detriment on the false reports and incomplete payroll records submitted by the Company. As a direct result of Defendants' misrepresentations and failure to disclose complete records, the Funds and District Council have suffered damages including unpaid benefit contributions, dues, interest, liquidated damages, and audit costs. The Funds have also provided benefit coverage to individuals based on the submission of the incomplete and false reports. Said coverage would not have been provided had the Funds been aware that the reports were false and incomplete. In the event that the Funds are unable to obtain full recovery of all amounts due from the Company, the Funds may become underfunded. Thus, by submitting false reports and incomplete payroll information, Defendant Caldwell enabled the Company to continue to operate resulting in a benefit to Caldwell and increasing the liabilities owed by the Company to the Funds and the District Council.

WHEREFORE, Defendants All Tight Masonry, Inc. and Brandon Caldwell should be ordered to submit the Company's books and records to an audit for the duration of time when employees were paid from additional accounts. Further, judgment should be entered in favor of the Plaintiffs and against Defendants for all amounts owed including unpaid contributions, dues, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs. Plaintiffs further request such other relief that is equitable and just.

June 12, 2008

Laborers' Pension Fund, et al.

By: /s/ Patrick T. Wallace
Patrick T. Wallace

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
Sub Office,
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between __Alltight Masonry Inc__ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 78, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.O.C.N.I/C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Scaffolding Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** This Agreement covers all work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may strike to enforce the terms hereof.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

10. **Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: __9-2__, 20__03__.

ACCEPTED:
Laborers' Local Union No. __75__

By: __Will R Dietz__
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: __Frank Riley__
Frank Riley, President & Secretary-Treas.

By: __James P. Connolly__
James P. Connolly, Business Manager

For Office Use Only: __CAWGC__

[RECEIVED SEP 12 2003 FIELD DEPT]

__Alltight Masonry Inc__ (Employer)
FEIN No.: __22-3977312__

__Brandon Caldwell, President__
(Print Name and Title)

__B Caldwell__
(Signature)

__16431 Ice Fear__ (Address)
__Lockport IL 60441__ (City, State and Zip Code)
__815-836-8096__ / __815-836-0076__ (Telephone/Telefax)

WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER


EXHIBIT A